UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

STEPHEN OLUSEGUN
BANJOKO,

    Petitioner,

v.

KEVIN J. RAMBOSK, IN HIS
OFFICIAL CAPACITY AS
WARDEN OF SOUTH FLORIDA
DETENTION FACILITY AS
SHERIFF OF COLLIER COUNTY
SHERIFF'S OFFICE; *et al.*,

    Respondents.

Case No. 2:26-cv-58-KCD-DNF

## ORDER

Petitioner Stephen Olusegun Banjoko is a non-citizen currently detained by immigration authorities. He has filed a habeas corpus petition (Doc. 1) and now seeks a temporary restraining order commanding his immediate release (Doc. 6).[1] He argues that his detention is unlawful because the government failed to follow its own procedures for revoking his supervised release, and because his removal is not reasonably foreseeable. (Doc. 1 at 31-37.) Because the law generally requires us to hear from both sides before unlocking the jailhouse door, and because Banjoko has not yet

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

met the high bar required for such extraordinary ex parte relief, the motion is **DENIED**.

## I. Background

Banjoko is a citizen of Nigeria who entered the United States around 1994 and eventually became a lawful permanent resident. (Doc. 1 ¶¶ 15-17.) But following a federal conviction for conspiracy to commit witness tampering, his lawful status was revoked. (*Id.*) Banjoko was ordered removed, but when that process stalled, the Government released him on an Order of Supervision. (*Id.* ¶ 21.) For the next twelve years, Banjoko remained at liberty, reporting regularly to immigration authorities while pursuing relief based on his subsequent marriage to a United States citizen. (*Id.* ¶¶ 22-27.)

The status quo changed on December 18, 2025. When Banjoko appeared for a check-in, the Government revoked his supervision and returned him to custody. (*Id.* ¶ 29.) A few weeks later, Banjoko filed this habeas case and motion for temporary restraining order. He presses two arguments for immediate release. First, Respondents are holding him with no end in sight in violation of the Due Process Clause. (Doc. 6 at 10-12.) Second, Respondents violated federal law by revoking his immigration supervision without the required process under 8 C.F.R. § 241.13. (*Id.* at 12-16.)

## II. Discussion

To obtain a temporary restraining order (TRO), the movant must establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005). Immediate injunctive relief is an "extraordinary and drastic remedy, and [the movant] bears the burden of persuasion to clearly establish all four of these prerequisites." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016).

This standard is not a mere formalism. It is a structural constraint on judicial power. Banjoko asks this Court to disturb the status quo—his current detention—and grant him essentially the full measure of relief he seeks in his habeas petition, all before the Government has even had an opportunity to be heard. The Court declines the invitation.

Banjoko's principal contention is that his detention has become indefinite and unconstitutional under *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 6 at 10.) He claims that because he was released in 2013 due to removal difficulties, and because (in his view) "nothing material has changed," the Government cannot possibly effectuate his removal now. (Doc.

3

6 at 11.) He therefore asserts a substantial likelihood of success on the merits.

This argument rests on a premise the Court is unwilling to accept on pure faith: that the diplomatic landscape between the United States and Nigeria is frozen in stone. The executive branch, not the judiciary, is charged with conducting foreign relations and negotiating repatriation agreements. *See Zadvydas*, 533 U.S. at 700. Banjoko claims that removal is not foreseeable. Perhaps he is right. But perhaps the Government has secured travel documents. Or perhaps negotiations with Nigeria have borne fruit. We do not know, because the Government has not yet filed a response.

In a *Zadvydas* challenge, the burden is initially on the detainee to provide good reason to believe that there is no significant likelihood of removal. 533 U.S. at 701. Only then does the Government have to respond with evidence. *See Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Banjoko would have us short-circuit this adversarial process. He asks the Court to presume the Government acts lawlessly before it has even appeared in the case. That is a bridge too far. A TRO is not a tool to be deployed lightly, nor is it a mechanism for the judiciary to manage the daily operations of the executive branch on an incomplete record.

Furthermore, the relief requested is mandatory—compelling the Government to act (release the prisoner)—rather than prohibitory.

Mandatory injunctions are particularly disfavored, and the burden on the movant is even higher. *See Powers v. Sec'y, Fla. Dep't of Corr.*, 691 F. App'x 581, 583 (11th Cir. 2017). Banjoko has not met this heightened standard.

As for his second argument, Banjoko contends that his re-detention violates the procedures in 8 C.F.R. § 241.13(i). (Doc. 6 at 12.) He claims that this regulation creates a liberty interest that DHS violated by revoking his release without a hearing or an individualized finding of changed circumstances. (*Id.* at 13-14.)

This argument faces two hurdles. First, on the current record, it is entirely opaque which regulatory framework governs Banjoko's case. While he seemingly assumes he was released under § 241.13, the Government also has broad discretionary authority to release detainees on orders of supervision under 8 C.F.R. § 241.4. The distinct obligations Banjoko relies on—"an individualized, fact-driven determination"—apply only if he was processed under § 241.13. *See Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *4 (S.D. Fla. Sept. 9, 2025). Without the administrative record, which the Government has yet to produce, this Court cannot assume the stricter regulatory constraints of § 241.13 apply.

Second, even if a procedural defect occurred—if, for example, the "informal interview" required by § 241.13(i)(3) was delayed—it does not follow that the outcome is immediate release. The remedy for a procedural

5

violation is generally a new proceeding that cures the defect, not a windfall of liberty that effectively decides the merits of the case. *Cf. Ortiz v. Eichler*, 616 F. Supp. 1046, 1066 (D. Del. 1985). Banjoko fails to explain why release is appropriate here for what amounts to alleged procedural violations. *See, e.g.*, *Barrios v. Ripa*, No. 1:25-CV-22644, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025) ("A temporary restraining order is not warranted when there are less drastic remedies available.").

One last issue. The TRO alternatively seeks an order prohibiting Banjoko's transfer outside the Middle District of Florida. (Doc. 6 at 22 n.8.) This will, according to Banjoko, prevent the Court from losing jurisdiction over the habeas petition. Such relief is unnecessary. "[J]urisdiction attaches upon the initial filing of the § 2241 petition and will not be destroyed by a petitioner's subsequent Government-effectuated transfer and accompanying change in physical custodian." *Villa v. Normand*, No. 5:25-CV-89, 2025 WL 3113200, at *4 (S.D. Ga. Oct. 16, 2025).[2]

### III. Conclusion

Banjoko raises serious questions that demand a prompt answer. But prompt does not mean instant, and due process is a two-way street. The

---

[2] The Court does not read Banjoko's TRO as also requesting an order prohibiting his removal from the United States. To the extent such relief is contemplated, however, the Court is without authority to grant it. *See Franco Rodriguez v. Acting Dir. U.S. Immigr. & Customs Enf't, Miami Field Off.*, No. 2:26-CV-2-KCD-DNF, 2026 WL 83972, at *1 (M.D. Fla. Jan. 12, 2026).

6

Government is entitled to explain why it believes it can remove Banjoko in the reasonably foreseeable future before this Court orders his release. For these reasons, the Motion for Temporary Restraining Order (Doc. 6) is **DENIED**.

**ORDERED** in Fort Myers, Florida on January 20, 2026.

Kyle C. Dudek
United States District Judge